IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| JAMES P. LUKASZKA, ) | |
| DARCEY L. LUKASZKA, ) | |
| ) | Bankruptcy No. 17-00242 |
| Debtors. ) | |

**RULING ON FIRST FEDERAL CREDIT UNION'S OBJECTION TO CONFIRMATION**

The Court held a confirmation hearing on May 9, 2017 in Cedar Rapids. Derek Hong appeared for Debtors James Lukaszka and Darcey Lukaszka ("Debtors"). J.K. Robison appeared for Creditor First Federal Credit Union ("First Federal"). Stephanie Hinz appeared for Wells Fargo Bank. Carol Dunbar appeared for herself as Chapter 13 Trustee. Trustee did not object to confirmation and Wells Fargo's objections were resolved. The parties agree that confirmation now depends on how the Court rules on First Federal's objection. Debtors and First Federal filed briefs and the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**STATEMENT OF THE CASE**

Debtors and First Federal dispute the effect of a 1099-C "Cancelation of Debt" form that First Federal issued to Debtors in 2013. Debtors argue that the 1099-C shows that First Federal canceled their debt. Debtors seek confirmation of a plan that orders First Federal to release the accompanying mortgage lien on their

home.  First Federal objects.  First Federal argues that it did not file the 1099-C to cancel the debt but simply to comply with IRS regulations.  First Federal argues that, even if the 1099-C does cancel the debt as to Debtors, it does not cancel the in rem obligation of the property.

## FACTS AND ARGUMENTS

The parties agree on the underlying facts.  In 2009, Debtors entered into a $62,000 mortgage loan with First Federal secured by their home.  That mortgage was behind a senior mortgage.  At some point Debtors stopped making payments on the note and defaulted on their debt with First Federal.  First Federal was unable to collect on the debt.  First Federal could not foreclose because there was insufficient equity in the property to pay off the senior mortgage.

In 2013, First Federal decided to stop collection activity.  First Federal issued a 1099-C form to Debtors and the Internal Revenue Service.  That form shows that First Federal canceled $59,667.34 of debt.  First Federal asserts that it issued the 1099-C to comply with Internal Revenue Service regulations.  The purpose of forms 1099-C are to show canceled or discharged debt as income to the borrower.  When Debtors filed a subsequent tax return, they included the $59,667.34 of canceled debt from First Federal as income and paid taxes on it.  The parties dispute whether these facts show that First Federal canceled the debt.

Debtors filed bankruptcy. Debtors now ask the Court to confirm a Chapter 13 plan that states that First Federal's debt was canceled in 2013 and to order First Federal to release its lien on Debtors' property. Debtors argue that this language is appropriate because the 1099-C shows that their debt to First Federal secured by their home was canceled. Debtors argue that First Federal's mortgage is bound to the underlying note. Debtors conclude that First Federal now has a $0 mortgage lien clouding their title. Debtors' plan requests an order that First Federal release its lien on their home.

First Federal objects to its treatment under the plan. First Federal argues that Debtors' plan improperly modifies their rights as a holder of a claim secured by a principle residence in violation of § 1322(b)(2). First Federal argues that the 1099-C does not cancel the debt or prove that it canceled the debt. First Federal argues that it stopped collection activity and issued the 1099-C simply to comply with IRS regulations. First Federal argues that the 1099-C form alone is not sufficient to prove that it canceled the debt.

First Federal further argues that, even if it canceled the debt, that cancelation was only effective with respect to Debtors' personal obligation—not the mortgage. First Federal argues that the in rem obligation of the home itself remains. First Federal concludes that it has a $59,667.34 claim secured by Debtors' primary residence that Debtors' Chapter 13 plan cannot alter.

3

## CONCLUSIONS OF LAW AND ANALYSIS

The Court must first decide whether First Federal canceled its claim against Debtors based on the 1099-C. If First Federal did cancel its claim, the Court must then decide whether First Federal still has a lien on the home securing its claim.

### I. What the 1099-C Means

The parties dispute the meaning or effect of a 1099-C. The parties agree that First Federal filed a 1099-C on its claim against Debtors, but dispute whether the 1099-C shows that First Federal has actually canceled debt. Debtors argue that the 1099-C, on its face, shows that First Federal canceled its debt. First Federal argues that it was simply complying with IRS regulations when it issued the 1099-C in this case and it had no intention to cancel the debt.

In general, "Forms 1099–C, as a matter of law, do not themselves operate to legally discharge debtors from liability on those claims that are described in such Forms 1099–C." Bononi v. Bayer Emps. Credit Union (In re Zilka), 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009) (collecting cases).

> Under the Internal Revenue Code, financial entities that discharge indebtedness of $600 or more must file a Form 1099–C, a type of "information return" which identifies the amount of the debt and the person whose debt has been discharged. A debtor who receives a discharge must report the amount as income. Thus, a Form 1099–C allows the IRS to compare the amount of discharged debt claimed by a lending institution with the amount of income reported by the person whose debt was discharged.

Cavoto v. Hayes, 634 F.3d 921, 923 (7th Cir. 2011) (citations omitted). There are

eight "identifiable events" that trigger the reporting obligation. The identifiable events include discharge through the debtor's filing for bankruptcy, the expiration of the statute of limitations for collection, discharge by agreement of the parties, a creditor's decision "to discontinue collection activity and discharge debt," and "expiration of the non-payment testing period.

F.D.I.C. v. Cashion, 720 F.3d 169, 178 (4th Cir. 2013) (quoting 26 C.F.R. § 1.6050P–1(b)(2)(i)).

There is "a split of authority on whether creditors may enforce debts after issuing a Form 1099-C to an account debtor." In re Rodriguez, 555 B.R. 871, 875 (Bankr. S.D. Fla. 2016). A minority of courts have found

> that filing a Form 1099–C with the IRS constitutes prima facie evidence of an intent to discharge a loan, at which point the burden of persuasion shifts to the creditor to proffer evidence that it was filed by mistake or pursuant to another triggering event in the regulations. These courts have generally noted that because filing a Form 1099–C has legal significance to the debtor's income tax liability, and because the debtor faces penalties or fines for failing to comply with the obligations imposed, it would be inequitable to permit a creditor to collect the debt after having received the benefit of the 'charge-off' of the debt from filing the Form 1099–C.

Cashion, 720 F.3d at 178 (citations omitted); see also Mennes v. Capital One, N.A., No. 13-CV-822-BBC, 2014 WL 1767079, at *5 (W.D. Wis. May 5, 2014) (collecting cases finding that Form 1099–C is prima facie proof that a debt is canceled). The United States Tax Court has said that the "issuance and filing of the Form 1099–C, while not dispositive, . . . is evidence of an intention to cancel

5

the loan." Owens v. C.I.R., 84 T.C.M. (CCH) 419 (T.C. 2002), aff'd in part, 67 F. App'x 253 (5th Cir. 2003).

On the other hand, "[t]he majority of courts that have addressed this issue . . . have found that an IRS Form 1099–C alone is not sufficient evidence that the debt has been cancelled." In re Washington, No. 16-02667, 2017 WL 1130144, at *5 (Bankr. D.S.C. Mar. 24, 2017). The majority position "relies principally on the language of the IRS regulations and the purpose of a Form 1099–C." Cashion, 720 F.3d at 178. In particular, it relies on the fact that "a creditor may be obligated to file a Form 1099–C even though an actual discharge of indebtedness has not yet occurred or is not contemplated." Id. at 179.

Moreover, IRS information letters show that the IRS does not consider the filing of a 1099-C to be an admission that a debt is discharged or a bar on future collection activity. Id. (citing I.R.S. Info. 2005–0207, 2005 WL 3561135 (Dec. 30, 2005); I.R.S. Info. 2005–0208, 2005 WL 3561136 (Dec. 30, 2005)). "According to the majority of court's reasoning, the IRS Form 1099–C is merely an IRS reporting document and not prima facie evidence of a cancellation of debt." In re Washington, 2017 WL 1130144, at *5.

Here, the Court is not presented with the question of the effect of the 1099–C standing alone. The parties agree that Debtors received the 1099-C from First Federal **and** that Debtors included the $59,667.34 of canceled debt from First

6

Federal as part of their gross income on a subsequent tax return. As a result, the Court need not decide the issue of whether a 1099–C, standing alone, is prima facie proof that a debt is canceled. Instead, the Court is presented with a 1099-C and the resulting tax reporting and tax liability. Based on this evidence together, the Court finds that the debt is canceled.

First Federal filed the 1099-C four years ago. Since that time, and a result of the 1099-C, Debtors included the $59,667.34 of canceled debt on their tax return. There is no indication that First Federal later amended, corrected, or withdrew the 1099-C or otherwise rectified Debtors' tax liability on the debt.

First Federal argues that its intent was simply to fulfil a reporting requirement—not to cancel the debt. However, there is no evidence about First Federal's intent in issuing the 1099-C in the record. In fact, the only evidence about what happened to the debt is the 1099-C and Debtor's payment of income tax on the canceled debt. The parties agreed to these facts—and no other relevant facts—when they submitted the case. The Court concludes that the debt was canceled and that it would be inequitable to find otherwise. In re Reed, 492 B.R. 261, 272 (Bankr. E.D. Tenn. 2013) ("[I]t would be inequitable . . . to require that [the debtor-defendant] report the discharge of debt as income on his federal tax return or face the potential tax consequences and hold that the plaintiff may continue to hold him liable on the debt." (internal quotation marks omitted)).

The Court acknowledges that there is authority to hold otherwise, particularly if the Court were to issue an order requiring First Federal to file a corrected 1099-C. Bononi v. Bayer Emps. Credit Union (In re Zilka), 407 B.R. 684, 691 (Bankr. W.D. Pa. 2009). However, neither party has requested such relief or made argument about such relief. The Court will not order First Federal to file a corrected 1099-C on its own motion.

## II.  Mortgage

First Federal argues that, even if the debt was canceled and it is no longer able to collected against Debtors, it may still collect against the home. Debtors argue that the amount of First Federal's lien on the home is tied to the amount that they owe. Debtors argue that, because they now owe $0 to First Federal, First Federal's lien—if it exists at all—is a $0 lien. Debtors emphasize that the lien exists here only to secure First Federal's claim against them—not as a separate obligation. Debtors argue that First Federal's $0 lien is clouding the title to their home and ask the Court to order First Federal to release its lien.

Iowa law controls this question, which the Iowa Supreme Court has addressed:

> Under the laws of this State a mortgage conveys no interest in, or title to, lands, but is simply a lien thereon for the purpose of securing the indebtedness which is its foundation. It is an incident—a security, in the nature of a lien—of the debt. It survives until the debt be paid or discharged, or the mortgage is released. . . . . When the debt is

> discharged or, by operation of law, may no longer be enforced its functions terminate, and not before.

Clinton Cty. v. Cox, 37 Iowa 570, 571–72 (1873). "[The mortgage] is incident to the debt it secures, and when the debt ceases to exist, or by operation of the statute ceases to be enforceable at law, the mortgage ceases to be enforceable in equity." Fitzgerald v. Flannagan, 125 N.W. 995, 996 (Iowa 1910), on reh'g sub nom. Fitzgerald v. Flanagan, 155 Iowa 217, 135 N.W. 738 (1912). Similarly, "it is a general rule that, if there be no debt, there is no mortgage, and consequently, if action for the debt be barred, an action to foreclose the mortgage is also barred." Fitzgerald v. Flanagan, 155 Iowa 217, 135 N.W. 738, 740 (1912).

Here, the Court has determined that the underlying debt was canceled. As a result, under Iowa law, as set out above, First Federal no longer has a mortgage on the Debtors' home and § 1322(b)(2) does not apply.

## CONCLUSION

**WHEREFORE**, First Federal's Objection to Confirmation is **OVERRULED**.

**FURTHER**, Debtors' Chapter 13 plan is confirmable. Trustee will submit a proposed confirmation order.

Dated and Entered:
August 4, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE